OPINION
ROBB, Judge.
Roger Bowles appeals the Worker's Compensation Board's ("the Board") order denying him retroactive entry into the See-ond Injury Fund provided for in Indiana Code section 22-38-3-18. We affirm.
Issue
Bowles raises one issue for our review, which we restate as whether the Board properly denied Bowles retroactive entry into the Second Injury Fund.
Facts and Procedural History
The case at issue here concerns Bowles' efforts to gain retroactive entry into Indiana's Second Injury Fund, which is provided for in Indiana Code section 22-3-3-13. This case stems out of Bowles' original application for adjustment of claim filed in 1993. We adopt the statement of facts as set forth in Bowles v. Griffin Indus., 798 N.E.2d 908 (Ind.Ct.App.2003), which are as follows:
[Oln December 15, 1986, Bowles visited Dr. Ronald G. Bennett complaining of back problems, bilateral leg pain, and difficulty walking. Bowles told Dr. Bennett that he had suffered from back pain for seven years and that his back pain was so severe that he had been hospitalized the previous June. Dr. Bennett noted that Bowles had previously been treated with cortisone injections. Dr. Bennett saw Bowles again in January and February 1987 because of Bowles's continued back pain, and, in August 1987, Dr. Bennett performed a discecto-my on Bowles to alleviate his symptoms.
On October 24, 1990, Bowles, while employed full-time by Griffin [Industries] as a driver, injured his lower back "in an incident arising out of and in the course of his employment" for Griffin. Griffin paid Bowles temporary total disability (TTD) benefits and statutory medical benefits from the day of the incident until September 22, 1998. Bowles filed his Application for Adjustment of Claim on September 80, 1998.
A hearing before a member of the Board was conducted on May 25, 2000, [the case was fully briefed by the parties by March 22, 2001,] and on March 5, 2002, the member found that Bowles was permanently partially impaired (PPT) as a result of the October 24, 1990 injury. Moreover, the Board member *144 found that Bowles's PPI rating was 21% of the whole person, as determined by Dr. Bennett. The Board member adopted Dr. Bennett's opinion that 11% impairment-53.5% of the 21% impairment rating-was attributable to the injury he received while employed with Griffin and 10% impairment-46.5% of the 21% impairment rating-was caused by Bowles's prior condition. Thus, the Board member awarded Bowles $6600 in reduced PPI benefits. The Board member held that "Just as his PPI is apportioned between his prior active condition and his work injury of October 24, 1990, pursuant to IC 22-3-3-12, [Bowles] PTD [permanent total disability] should also be apportioned." Accordingly, the Board - member - awarded - Bowles $55,967.13 in PTD benefits, which represented 53.5% of the PTD benefits he would have received had he not had a preexisting condition. The Full Worker's Compensation Board affirmed the Board member's decision [on November 8, 2002].
Id. at 909-10.
On appeal, we first noted that this case centered on Indiana Code section 22-8-3-12, "which apportions worker's compensation awards between pre-employment and employment periods in the event that an injury suffered in the course of employment aggravated a prior medical condition." Id. at 910. We determined that the Board had simply applied the impairment ratio to determine the allocation of a disability award and that this procedure was not within the language of Indiana Code section 22-38-8-12. Id. at 912. We ultimately reversed and remanded the case back to the Board. Id.
Before the Board could take any action on remand, in January of 2004, Griffin Industries' insurer paid Bowles the remainder of the benefits he was entitled to for his permanent total disability (PTD). Thus, by January 29, 2004, Bowles had received all of the temporary total disability (TTD) and PTD benefits he was entitled to under Indiana Code section 22-8-3-10. On January 29, 2004, Bowles, pursuant to Indiana Code section 22-3-3-18, filed an application for benefits from Indiana's See-ond Injury Fund. In his application, Bowles also requested retroactive entry into the Second Injury Fund as of November 21, 2001. In July of 2004, a single member of the Board granted Bowles entry into the Second Injury Fund as of January 29, 2004, but denied his request for retroactive admittance. Bowles appealed this decision to the full Board. On November 3, 2004, the full Board issued an order affirming the decision of the single member. The full Board's November 3, 2004, Order states in pertinent part:
It is further found that this cause has been set and continued by the parties in this case multiple times over a span of 11 (eleven) years due to multiple reasons including failure of the Plaintiff [Bowles] to timely respond to discovery requests.
It is further found that the following examples indicate the above referenced delay:
September 30, 1993: Application for Adjustment of Claim filed on behalf of [Bowles] alleging an October 24, 1990 date of injury.
December 27, 1993: Motion to Continue filed on behalf of the Defendant [Griffin Industries] for Hearing set by the Board on January 6, 1994. Defendant's Motion states that [Bowles'] deposition was requested on five dates in November 1993 and three dates in December 1998 with no response from [Bowles'] counsel.
December 27, 1998: [Bowles] filed a Request to Continue the hearing set by the Board.
*145 March 22, 1994: Motion to Continue April 12, 1994 hearing filed on behalf of the Defendant due to [Bowles'] deposition recently taken on March 3, 1994 and pending discovery requests. No objection filed on behalf of [Bowles].
August 31, 1994: Motion to Continue hearing set for September 22, 1994 filed on behalf of the Defendant, defendant states they are waiting on depositions of [Bowles'] medical experts. No objection filed on behalf of [Bowles].
December 19, 1994: Motion to Continue hearing set for December 19, 1994 filed on behalf of the defendant. No objection filed on behalf of [Bowles].
April 17, 1995; Motion to Continue hearing set for April 17, 1995 filed on behalf of [Bowles].
September 27, 1995: Motion to Continue hearing set for October 12, 1995 filed on behalf of the Defendant. Defendant states in their continuance that a deposition is still pending due to a cancellation on behalf of [Bowles]. No objection filed on behalf of [Bowles].
January 29, 1996: Motion to Continue hearing set for February 22, 1996 filed on behalf of the Defendant. Defendant states in their continuance that they cannot go forward because [Bowles] has cancelled a key deposition two times. No objection filed on behalf of [Bowles].
May 30, 1996: Motion to Continue hearing set for June 18, 1996 filed on behalf of the defendant. - Motion states that both the Plaintiff and Defendant continue to conduct discovery.
June 4, 1996: [Bowles] objects to the Defendants [sic] Motion to Continue after the Board has already granted it on May 31, 1996.
June 6, 1996: Defendant responds to [Bowles'] objection explaining the remaining discovery to be done and stating that "[Bowles] certainly cannot lay all of the delay in this case at defendant's doorstep." November 21, 1996; Motion to Continue hearing set for December 3, 1996 filed on behalf of the defendant stating that [Bowles] and the Defendant had met and agreed to the continuance to conduct further discovery.
March 12, 1997: Motion to Continue hearing set for April 3, 1997 filed on behalf of the defendant stating that again [Bowles] and Defendant agree for the matter to be continued.
June 6, 1997: Motion to compel discovery filed on behalf of the Defendant due to [Bowles] cancellation of a fune-tional capacity evaluation.
September 9, 1997: [Bowles] objection to Defendant's motion for a Functional Capacity Evaluation filed.
October 6, 1997 Motion to Continue hearing set for October 15, 1997 filed on behalf of [Bowles].
January 21, 1998: Motion to Continue hearing set for February 19, 1998 filed on behalf of the Defendant due to not having the Functional Capacity Exam report.
May 26, 1998: Motion to Continue hearing set for June 11, 1998 filed on behalf of the Defendant. Defendant states in its motion that [Bowles] had an additional FCE performed without notifying the Defendant and that [Bowles] had not provided the defendant with a copy of this report even after being requested to do so.
June 1, 1998: Motion to Continue filed on behalf of [Bowles].
March 16, 2000: Order to Show Cause issued by the Board regarding why *146 the matter should not be dismissed for want of prosecution.
May 25, 2000: Hearing held and the parties request that the matter not be decided until they submit post-hearing briefs.
July 6, 2000; Request for extension of time by the parties to file post-hearing briefs.
July 28, 2000: Additional request for extension of time by the parties to file post-hearing briefs.
August 21, 2000: Additional request for extension of time by the parties to file post-hearing briefs. o
February 14, 2001: Additional request for extension by the defendant to file a response to post-hearing briefs, and the Plaintiff does not object.
March 22, 2001: Briefs finally completed and filed, and the matter is now, for the first time, ready to. be decided by the single hearing member.
March 5, 2002: Decision issued on behalf of the Single Hearing Member.
It is further found that at all times the cause was set the Board was willing and able to hear the cause. [Bowles] at no time asked for an expedited hearing.
It is further found that but for the delay caused by [Bowles] in failing to respond to discovery in a timely fashion this case would have had a hearing and final award issued by the Board several years before the claimant was eligible for Second Injury Fund benefits.
It is further found that the delay on behalf of the parties should rot be borne by the Second Injury Fund, which is funded by all Indiana employers.
It is further found that any delay in the process did not preclude [Bowles] from filing his application to the Second Injury Fund. . f
It is further found that Administrative Rule 681 IAC 1-1-3831 states that "compensation from the second injury fund shall commence on the filing date of claimamt's application for said benefits." [Bowles] had the ability to file his application and preserve that date while appealing the decision 'of the Board, but [Bowles] failed-to do so.
It is further found that the order of the Single Hearing Member shall be sustained. [Bowles] shall continue to receive current benefits from the Second Injury Fund as approved.
Appellant's Appendix at 28-81 (emphasis in original). Following this decision by the full Board, this appeal ensued.
Discussion and Decision
Bowles argues that the Board erred when it denied him retroactive entry into the Second Injury Fund. We disagree.
I. Standard of Review
On appeal, we review a decision of the Board only to determine whether substantial ' evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. Walker v. State, Muscatatuck State Dev. Cir., 694 N.E.2d 258, 266 (Ind.1998). We do not reweigh the evidence or judge the credibility of witnesses. Id. We are bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. U.S. Steel Corp. v. Spencer, 655 N.E.2d 1243, 1246 (Ind.Ct.App.1995), trans. denied.
II. Retroactive Entry Into the Second Injury Fund
Bowles argues that the Board erred in denying him retroactive entry into the Second Injury Fund back to November 21, 2001. The Second Injury Fund was *147 created by our legislature in Indiana Code section 22-8-8-13. One of the purposes of the Second Injury Fund is to provide monetary benefits to employees who are permanently and totally disabled and have received the maximum compensation they are entitled to under the Worker's Compensation Act. Indiana Code section 22-3-3-13 specifically provides:
(g) If an employee who is entitled to compensation under IC 22-3-2 through IC 22-3-6 either:
(1) exhausts the maximum benefits under section 22 of this chapter without having received the full amount of award granted to the employee under section 10 of this chapter; or
(2) exhausts the employee's benefits under section 10 of this chapter;
then such employee may apply to the [Bloard, who may award the employee compensation from the second injury fund established by this section, as follows under subsection (h).
(h) An employee who has exhausted the employee's maximum benefits under section 10 of this chapter may be awarded additional compensation equal to sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage at the time of the employee's injury not to exceed the maximum then applicable under section 22 of this chapter, for a period of not to exceed one hundred fifty (150) weeks upon competent evidence sufficient to establish:
(1) that the employee is totally and permanently disabled from causes and conditions of which there are or have been objective conditions and symptoms proven that are not within the physical or mental control of the employee; and
(2) that the employee is unable to support the employee in any gainful employment, not associated with rehabilitative or vocational therapy.
The workings of the Second Injury Fund are further explained in Title 631, section 1-1-3831 of the Indiana Administrative Code, which states that
[alwards for the payment of compensation from the second injury fund shall set forth that no payments out of the second injury fund will be made to a claimant until the full amount due from the employer for whom he was working when he received his second injury shall have been fully paid; said payments of compensation from the second injury fund shall commence on the filing date of claimant's application for said benefits....
The Board has already determined that Bowles is permanently and totally disabled. Bowles correctly points out that because he is PTD, pursuant to Indiana Code section 22-3-3-10, he is entitled to five hundred and seventy-eight weeks of benefits.[1] Bowles argues that his five hundred and seventy-eight weeks of benefits should have begun on October 25, 1990, the day after his injury, and ended on *148 November 21, 2001. As of November 21, 2001, Bowles contends that he should have been eligible for benefits from the Second Injury Fund.
However, Indiana Code section 22-8-3-13 provides that an individual is only eligible for benefits from the Second Injury Fund after he has exhausted the benefits available to him under Indiana Code seetion 22-3-38-10. Bowles did not exhaust the benefits available to him under Indiana Code section 22-3-83-10 until January 29, 2004. Bowles asserts that any delay in exhausting the benefits available to him under Indiana Code section 22-8-8-10 is not attributable to him but to the Board who delayed in ruling on his case and ultimately handed down an erroneous decision that had to be reversed on appeal. Bowles argues that it would be unfair to punish him for the delay in his case caused by the Board, and, thus, he should be allowed to retroactively enter the Second Injury Fund back to November 21, 2001.
However, in its order denying Bowles retroactive entry into the Second Injury Fund, the Board listed two pages of various delays in Bowles' case that it attributed to Bowles. Delays in Bowles' case began in 1993 shortly after Bowles filed his Application for Adjustment of Claim and continued up through 2001 when the parties completed © their - post-hearing briefs. The Board found that Bowles' case had to be continued multiple times for multiple reasons including Bowles' failure to "timely respond to discovery requests." Appellant's App. at 28. We agree with the Board that absent the delays attributable to Bowles, the Board could have resolved this case several years before Bowles became eligible for benefits from the Second Injury Fund. Therefore, we conclude that any delay in exhausting the benefits available to him under Indiana Code section 22-8-3-10 is principally attributable to Bowles rather than the Board.
Indiana Code section 22-38-8-13 provides that before a party can be eligible to receive any benefits from the Second Injury Fund, he must first exhaust the benefits available to him under Indiana Code seetion 22-3-8-10. Furthermore, Title 631, section 1-1-31 of the Indiana Administrative Code provides that payments of compensation from the Second Injury Fund commence on the date that the claimant files his application for said benefits. Here, Bowles did not exhaust the benefits available to him under Indiana Code seetion 22-8-3-10 until January 29, 2004. Any delay in exhausting those benefits is attributable to Bowles. Bowles applied for benefits from the Second Injury Fund on January 29, 2004. Therefore, the Board properly concluded that Bowles was entitled to benefits from the Second Injury Fund commencing as of January 29, 2004, and that he was not entitled to retroactive entry into the Second Injury Fund.
Conclusion
We hold that the Board properly concluded that Bowles -was only entitled to benefits from the Second Injury Fund starting from January 29, 2004, and that he was not entitled to retroactive entry into the Second Infury Fund because Bowles did not exhaust the benefits available to him under Indiana Code section 22-83-3-10 until January 29, 2004 and because any delay in exhausting those benefits is attributable to Bowles. The Board's order denying Bowles retroactive entry into the Second Injury Fund is therefore affirmed.
Affirmed.
FRIEDLANDER, J., and BAILEY, J., concur. .

. Bowles was injured on October 24, 1990. Indiana Code section 22-3-3-10(b) provides:
With respect to injuries in the following schedule occurring on and after July 1, 1990, and before July 1, 1991, the employee shall receive, in addition to temporary total disability benefits not exceeding seventy-eight (78) weeks on account of the injury, a weekly compensation of sixty percent (60%) of the employee's average weekly wages, not to exceed two hundred dollars ($200) average weekly wages, for the period stated for the injury. scone oak
(3) For injuries resulting in total permanent disability, five hundred (500) weeks.
Therefore, Bowles is correct that pursuant to Indiana Code section 22-3-3-10, he was entitled to five hundred and seventy-eight weeks of benefits.